UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:12-cv-366-RJC

| | |
|---|---|
| NATHANIEL GOODE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| LEWIS SMITH, Administrator, | ) |
| Albemarle Correctional | ) |
| Institution, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**THIS MATTER** is before the Court on consideration of Respondent's motion to dismiss the petition for writ of habeas corpus filed by Petitioner pursuant to 28 U.S.C. § 2254. For the reasons that follow, Respondent's motion to dismiss will be granted.

**I.    BACKGROUND**

On February 20, 2007, the North Carolina Court of Appeals filed an opinion affirming in part, and reversing in part, Petitioner's convictions which were sustained after a jury trial in Rutherford County Superior Court. State v. Goode, 2007 N.C. App. LEXIS 393 (N.C. Ct. App. 2007) (unpublished).[1] The court of appeals summarized the facts and issues associated with Petitioner's appeal as follows:

> On 27 July 2004, law enforcement officers from the Rutherfordton
> Police Department and the Rutherford County Sheriff's
> Department responded to a call from Lavette Kelly claiming she was

---

[1] The court's decision to reverse two convictions due to lack of evidence has no bearing on this Court's inquiry into whether Petitioner's § 2254 motion is timely. The reversal served to eliminate two of his six, 133 to 169 month terms which were to run concurrent to one another, but consecutively to his sentence of 251 to 311 months for conviction on the charge of attempted murder.

1

being held hostage in an outbuilding of defendant's home at 183 Laurel Hill Drive, just outside the city limits of Rutherfordton, North Carolina. After a search of the premises, the responding officers discovered Kelly and defendant inside the outbuilding. Deputy Sheriff Alan Greene was the first officer to enter the outbuilding, followed by Officer Craig Keller. When the officers entered the building through the back door they observed Ms. Kelly on the floor and chained to a pool table. As Detective Green asked Ms. Kelly if anyone else was in the building, defendant appeared from behind the pool table with a rifle pointed at the officers. Detective Greene turned around, told Officer Keller there was a gun, and pushed him out of the building. As the officers were exiting the building, Detective Greene heard a "click" as if defendant had pulled the trigger on the rifle but the bullet failed to fire.

Officers surrounded the building and a few minutes later they heard two shots fired from inside. Shortly thereafter, defendant surrendered to the officers. Ms. Kelly had been shot twice by defendant, once in the back of her head and once in her shoulder. Inside officers found a .22 caliber rifle and, on the pool table, a Heckler & Koch .40 caliber semi-automatic pistol with two live rounds next to it -- a .22 round and a 9 millimeter round. A bullet was lodged inside the rifle. Six spent shell casings were also collected from the floor of the outbuilding. Later tests on the bullets recovered from Kelly's wounds concluded they could have been fired from the pistol found on the pool table, but it could not be determined conclusively that the bullets had in fact been fired from the pistol.

*Procedural History*

Defendant was indicted by the Rutherford County Grand Jury on 6 June 2005 on charges of: (1) attempted first degree murder; (2) assault with a deadly weapon with intent to kill inflicting serious injury; (3) two counts of assault with a firearm or other deadly weapon on a government official; (4) first degree kidnapping, (5) possession of a stolen firearm; (6) possession of a firearm by a felon; and (7) having attained the status of an habitual felon. This case was tried before a jury during the 31 October 2005 Criminal Session of Rutherford County Superior Court, the Honorable Laura J. Bridges, Judge Presiding.

On 22 November 2005, the jury returned its verdict finding defendant guilty of attempted first degree murder, assault with a

> deadly weapon with intent to kill inflicting serious injury, two
> counts of assault with a firearm or other deadly weapon on a
> government official, second degree kidnapping, possession of a
> stolen firearm, possession of a firearm by a felon, and having
> attained the status of an habitual felon. The trial court entered
> judgments dated 10 November 2005, imposing a sentence of 251 to 311
> months' imprisonment for attempted murder and six consecutive
> sentences of 133 to 169 months imprisonment for the remaining charges.
>
> Defendant raises the issues of whether the trial court erred by: (I) denying
> his motion to dismiss the charges for insufficient evidence as to the
> charges of possession of a stolen firearm, possession of a firearm by a
> felon, and assault with a firearm or other deadly weapon on a government
> official; (II) instructing the jury on false, contradictory or conflicting
> statements by defendant; (III) giving instructions on lesser included
> offenses as to the attempted murder and felony assault charges which
> failed to inform the jury when or how they should consider the lesser
> offenses; and (IV) entering judgment on both attempted murder and
> assault with a deadly weapon with intent to kill inflicting serious injury.

Goode, 2007 N.C. App. LEXIS 393, at *2-5.

According to the record before this Court, Petitioner did not file a petition for discretionary review with the Supreme Court of North Carolina, nor did he file a petition for a writ of certiorari with the Supreme Court of the United States. Instead, on March 10, 2010, Petitioner filed a motion for appropriate relief ("MAR") in the Superior Court of Rutherford County and the same was denied by order entered on June 28, 2010. See (Doc. No. 7-9). On September 1, 2010, the North Carolina Court of Appeals denied Petitioner's petition for a writ of certiorari, (Doc. No. 7-13), and on October 6, 2011, the Supreme Court of North Carolina granted the State's motion to dismiss his petition for a writ of certiorari. (Doc. Nos. 7-16; 7-18).

On November 13, 2012, Petitioner filed the present Section 2254 petition and raises four claims for relief: (1) a .40 caliber pistol which was found prior to Petitioner's state trial was wrongfully withheld from him and prejudiced his defense at trial; (2) his trial lawyer provided ineffective assistance of counsel; (3) a juror committed misconduct by speaking with police

during a lunch break; and (4) Officer Winslow supplied the victim with drugs in an effort to influence her testimony at trial. See generally (Doc. No. 1 at 18-22).

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), as amended in 1996, provides in relevant part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time seeking such review; . . . or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A) and (D).

### A. Statute of Limitations

Respondent has filed a motion to dismiss Petitioner's Section 2254 motion as untimely under the above provisions. Because Petitioner did not file a petition for discretionary review with the Supreme Court of North Carolina, his criminal judgment became final for purposes of federal habeas review on March 27, 2007, or 35 days following the filing of the North Carolina Court of Appeals opinion affirming, in part, his convictions. See N.C. R. App. 14(a) and 15(b) (2007) (providing fifteen days after the court of appeals issues its mandate to file a notice of appeal and/or petition for discretionary review with North Carolina Supreme Court); N.C. R. App. 32(b) (2007) (unless otherwise ordered by the court, the mandate issues 20 days after decision is filed). Further, although not determinative of the present outcome, Petitioner did not file a petition for a writ of certiorari with the Supreme Court of the United States. If properly filed, this petition could have extended the time for filing his § 2254 motion. See Sup. Ct. R. 13.1

4

(Supreme Court rules providing 90 days from entry of judgment to file a petition for a writ of certiorari); see also Clay v. United States, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Of course, as noted by Respondent, Petitioner must have first sought review by North Carolina's highest court under state law in order to proceed before the United States Supreme Court. See Gonzalez v. Thaler, 132 S. Ct. 641, 656 (2012) ("We thus agree with the Court of Appeals that because Gonzalez did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.").

Returning to the present case, Petitioner's judgment was final on March 27, 2007, after he failed to pursue relief to the State's highest court. Under the AEDPA, § 2254(d)(1), Petitioner had one year to file a § 2254 and this time expired on March 26, 2008. And Petitioner's MAR, filed in March 2010, cannot serve to render his § 2254 motion timely. That is so because Petitioner's present arguments make plain that he was aware of these issues while he was proceeding before the Superior Court in his criminal trial. There is simply no reasonable evidence to suggest that the issues Petitioner pressed in his MAR were revealed to him after his initial one-year limitations period expired. Further, post-conviction motions filed after the expiration of the one-year period has expired do not render timely a § 2254 motion. See Minter v. Beck, 230 F.3d 663, 665-66 (4th Cir. 2000) (noting that once the one-year time period has elapsed from the date judgment becomes final, a petitioner's pursuit of state post-conviction relief does not restart the clock).

Petitioner did not file the § 2254 motion until October 17, 2012, the date on which he delivered his petition to prison authorities for mailing to the clerk of court. See Houston v. Lack,

5

487 U.S. 266, 276 (1988). Given this date of mailing, it appears that Petitioner's federal habeas petition is filed some four and half years outside the one-year statute of limitations as provided for under the express language of the AEDPA, and is due to be dismissed unless Petitioner can present an appreciable case for equitable tolling.

      B.      <u>Equitable Tolling</u>

Following the filing of Respondent's motion to dismiss, the Court entered an Order providing Petitioner with an opportunity to respond to the statute of limitations defense. (Doc. No. 8). Petitioner responded and appears to recognize that his § 2254 motion is untimely and offers his age, his ailing eyesight, and his limited educational background as cause to excuse his late filing. (Doc. No. 9 at 2). An untimely § 2254 petition can be considered on the merits if the petitioner successfully "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." <u>Holland v. Florida</u>, 130 S. Ct. 2549, 2562 (2010) (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)).

Petitioner's argument in support of equitable tolling is unavailing. <u>See, e.g.</u>, <u>United States v. Sosa</u>, 364 F.3d 507, 512 (4th Cir. 2004) (a prisoner proceeding pro se fails to satisfy requirements for equitable tolling by resting on ignorance of the law) (citing <u>Cross-Bey v. Gammon</u>, 322 F.3d 1012, 1015 (8th Cir. 2003); <u>Delaney v. Matesanz</u>, 263 F.3d 7, 15 (1st Cir. 2001) (same); <u>see also</u> <u>United States v. Flores</u>, 981 F.2d 231, 236 (5th Cir. 1991) (holding pro se status, illiteracy, deafness, and lack of legal training are not external factors excusing abuse of the writ).

In sum, the Court finds that the arguments Petitioner now seeks to raise were or should have been apparent and explored on challenge, if at all, through his direct appeal in State proceedings or through a timely motion for appropriate relief. <u>See</u> 28 U.S.C. § 2244(d)(1)(D)

(statute of limitations begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."). Petitioner's effort to present these arguments in the instant action is untimely and his petition will be dismissed.

III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion to Dismiss the petition for a writ of habeas corpus is **GRANTED**. (Doc. No. 6);

2. Petitioner's petition for a writ of habeas corpus is **DISMISSED** as untimely. (Doc. No. 1);

3. Petitioner's Motion to Dismiss is **DENIED.** (Doc. No. 9);

4. Petitioner's Motions to Dismiss State Charges are **DENIED**. (Doc. Nos. 10; 11); and

5. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: May 17, 2013

Robert J. Conrad, Jr.
Chief United States District Judge